[Civ. No. 35601. Second Dist., Div. Five. July 23, 1970.]

Estate of GRACE M. HARRIS, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Appellant, v.
MARGARET W. HARRIS, Individually and as
Executrix, etc., Objector and Respondent.

## COUNSEL

Myron Siedorf, Walter H. Miller and Robert J. Hansen for Petitioner and Appellant.

Karl F. Geiser for Objector and Respondent.

## OPINION

**FRAMPTON, J.**[*] — Grace M. Harris died testate on or about November 19, 1967, a resident of Los Angeles County. The inventory of the estate showed probate assets of $78,195.21. The inheritance tax appraiser, appointed by the court, filed his Report of Inheritance Tax Appraiser with the court on May 20, 1969. The report disclosed, in addition to the appraised inventory value, two supplemental contracts with the Massachusetts Mutual Life Insurance Company of a total net value of $85,955.78. These two contracts were made payable to Margaret Harris, who was also the sole legatee under decedent's will. The net probate estate and the two supplemental contracts were taxed to Margaret Harris resulting in an inheritance tax of $9,290.49.

In the year 1928, William Frank Harris (the predeceased husband of Grace M. Harris, deceased, and the father of respondent Margaret W. Harris) procured six policies of insurance on his life. On June 28, 1930, he executed the following amendment to one of the six policies: "The Massachusetts Mutual Life Insurance Company is hereby authorized and requested to amend contract for insurance on the life of William Frank Harris under Policy No. 837739, as follows:

"If the policy on my life described by the above number shall mature as a death claim, the proceeds shall be retained by the Company, as provided in Option 'D,' and interest thereon paid monthly to my wife, Grace M. Harris, if living, with the right on her part at any time after said maturity to withdraw the whole or any part of the proceeds.

"If my said wife is not living at said maturity or upon her death while receiving interest installments, if my daughter, Margaret W. Harris, shall then be living, the proceeds or balance thereof shall be retained by the Company, as provided in Option 'D' and interest thereon paid monthly to her, with the right on her part, at any time after the death of my said wife to withdraw the whole or any remaining part of the proceeds.

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

"Upon the death of the last survivor of myself, my said wife, and my said daughter, the proceeds or any balance thereof then retained by the Company shall be paid forthwith to my executors or administrators for the benefit of my estate."

On April 13, 1938, William Frank Harris executed an amendment to the other five policies of life insurance which contained language similar in substance to that contained in the amendment of June 28, 1930.

William Frank Harris, the insured under the policies, retained the right to name or change the beneficiary therein, and the right of cash surrender.

Grace M. Harris, deceased, never drew anything but interest on the proceeds of said policies.

Margaret W. Harris, individually, and as executrix of the will of Grace M. Harris, deceased, filed Objections to Report of Inheritance Tax Appraiser. She objected to the inclusion of the supplemental contracts in the report, and objected that the insurance exclusion provided by section 13724 of the Revenue and Taxation Code was improperly disallowed by the inheritance tax appraiser. The trial court sustained the objection to the inclusion of the supplemental contracts in the report and reduced the amount of inheritance tax from the sum of $9,290.49 to the sum of $2,808.12.

The issue presented here is whether the proceeds of life insurance on the life of a predeceased decedent, which have been converted into a supplemental contract for the benefit of a subsequent decedent, should be subject to the inheritance laws when the subsequent decedent dies possessing the unexercised right to withdraw the whole of the proceeds.

Respondents urge that (1) the proceeds from the insurance policies on the life of the prior decedent are exempt from inheritance tax under the provisions of regulations 13723-13724(e) (2) of title 18 of the California Administrative Code; (2) if such proceeds are not wholly exempt, then they are exempt to the extent of $50,000 thereof as is provided by section 13724 of the Revenue and Taxation Code, and (3) section 13696 of the Revenue and Taxation Code relating to powers of appointment is not applicable to the case.

The case at bench presents a close factual situation to that in *Estate of Loewenstein,* 37 Cal.2d 843 [236 P.2d 566]. In *Loewenstein,* one Henry Meis, an uncle of Melanie Loewenstein, decedent, contracted with his insurance company that, in lieu of payment under an insurance policy, the company would retain the fund and pay interest thereon to Melanie and upon her death to her son, Herbert. A provision in the contract read that

Melanie, with the written consent of said Henry Meis, or if he be deceased, with the written consent of his representatives "may require the company to pay to her order, any portion of the amount retained." After the death of Henry Meis, Melanie and the Meis' executors executed a document entitled "Request for and Consent to Withdrawals of Proceeds of Insurance Policy," and filed it with the company. This document read in part that the company was to pay her all or any portion of the amount retained, payments to be made at any time she may desire. No further request was made by Melanie and no portion of the contract principal was actually paid to her. Upon Melanie's death, the contract principal was included by the inheritance tax appraiser in her distributable estate, and the court ordered an inheritance tax fixed on this transfer to her son, Herbert.

· In affirming the order fixing inheritance tax, the court said at pages 846-847: "There was nothing in the contract to prevent Melanie's withdrawal of the entire fund with the consent of the Meis executors. She so requested and they consented. The consent of Herbert or any other appointee under the contract was not made a prerequisite to Melanie's exercise of the power to withdraw the fund. Prior to the exercise of that power the gift to her was qualified and limited. The execution of the request and consent completed the gift to her. She thereby obtained unqualified ownership of the principal fund, or the equivalent attributes of ownership which here must be deemed controlling. [Citation.] Upon execution of the request and consent all control by Meis or his representatives and of contingent remaindermen was terminated. Thereby in legal effect Melaine became the owner of the fund as fully as though it were on deposit to her account in a bank. It became a fund on deposit to her order with the insurance company and as such a part of her estate." The court went on then to say that "completed right to withdraw the fund, as money on deposit to her order, is equivalent to the actual withdrawal thereof." (*Estate of Loewenstein, supra,* p. 847.)

▉ In the case at bench, under the supplemental contract, upon the death of William Frank Harris, the decedent Grace M. Harris became vested of the right to withdraw the whole or any part of the principal fund then held by the company. No consent was necessary for such withdrawals either from the personal representative of William Frank Harris or from the daughter, Margaret W. Harris. Under these circumstances we are of the opinion that, for the purpose of the inheritance tax laws, the completed right to withdraw the fund, as money on deposit to her order, is equivalent to the actual withdrawal thereof. "When as here an absolute gift has been accomplished and a subsequent independent succession is disclosed, that succession is subject to the taxing statute." (*Estate of Loewenstein, supra,* 37 Cal.2d 843, 848.)

If it may be said that the contract created a trust with the company holding the fund as trustee for the benefit of Grace M. Harris, deceased, and her daughter Margaret W. Harris, with the power on the part of Grace M. Harris, deceased, to invade and take the entire corpus of the trust estate (see *Hyman* v. *United States,* 187 F.Supp. 661; *United States* v. *Hubner,* 285 F.2d 29; *United States* v. *Turner,* 287 F.2d 821), then the failure on the part of Grace to exercise such power, resulting in her daughter receiving the proceeds, would be a transfer subject to inheritance tax. (Cf. Rev. & Tax. Code, §§ 13692, 13696.)

█ The findings of fact and conclusions of law state, in part, that the insurance exclusion provided by sections 13723 and 13724 of the Revenue and Taxation Code were disallowed by the inheritance tax appraiser. Section 13724 provides for an exemption of $50,000' of the proceeds of the insurance policies mentioned in section 13723. Section 13721 of the Revenue and Taxation Code defines "insurance policy" as used in sections 13723 and 13724 as follows: " 'Insurance policy,' as used in this article, means a life or accident insurance policy the proceeds of which are payable by reason of the death of the insured."

The insured herein was William Frank Harris, the predeceased spouse of the decedent Grace M. Harris. The insurance exclusion was available upon his death but not on the death of the decedent, Grace M. Harris, since she was not the insured and the payment of the proceeds to Margaret W. Harris did not involve any element of insurance risk. The proceeds were transferred to Margaret W. Harris under a supplemental contract when decedent, Grace M. Harris, died leaving the corpus of the fund intact. (Cf. *Estate of Barr,* 104 Cal.App.2d 506, 508 et seq. [231 P.2d 876].) If respondent's claim of exemption under section 13724 of the Revenue and Taxation Code is carried to its logical extreme, it would follow that the allowance of the insurance exclusion contained therein would mean that a fund once established from the proceeds of a life insurance policy would be excluded from the inheritance tax as it passed as a death transfer from each successive decedent.

█ Respondent urges that the entire proceeds of the contracts are exempt from tax pursuant to the provisions of regulations 13723-13724(e) (2) of title 18 of the Administrative Code.

Regulations 13723-13724(e) of the Administrative Code reads as follows: "Proceeds of Life Insurance on Prior Decedent Payable to Present Decedent.

"(1) Present Decedent Selected Mode of Settlement. If the proceeds of a policy of insurance issued upon the life of a prior decedent is being paid

in installments or otherwise to a present decedent and the mode of settlement was selected by the present decedent, the balance due on the policy is subject to the Inheritance Tax Law and the insurance exemption is not applicable.

"(2) Prior Decedent Selected Mode of Settlement. If the proceeds of a policy of insurance issued upon the life of a prior decedent is being paid in installments or otherwise to a present decedent and the mode of settlement was selected by the prior decedent, the balance due on the policy is not subject to the Inheritance Tax Law."

It is apparent from the foregoing regulation that to qualify for the exemption provided therein the mode of settlement must be selected by the prior decedent. In the case at bench, the prior decedent, William Frank Harris, did not select the mode of settlement but rather gave the present decedent the right to make such selection. If the prior decedent had selected the mode of settlement and pursuant to such selection, Grace M. Harris had only the right to receive interest on the fund, she would, in effect, have had only a life estate in the fund and this would have had no value at her death and thus would not be subject to inheritance tax.

Since Grace M. Harris had the right to withdraw all or any part of the fund pursuant to the terms of the supplemental contract, she selected the mode of settlement by choosing to take interest only, thereby leaving the corpus of the fund intact upon her death. In these circumstances, regulations 13723-13724(e)(1) are applicable, and the entire proceeds of the fund are taxable.

The order fixing inheritance tax is reversed.

Stephens, Acting P. J., and Aiso, J., concurred.